May it please the Court, my name is Robert Pastor. I'm here on behalf of a woman named Cecilia Gregorio. I'd like to read you a portion of the record, it's at page 32, it's up for deposition transcript, page 116, 11 through 20. Question. Tell me about the conversation with the CSR, the one that gave you the quote. Answer. The one that asked me if I wanted an umbrella policy and I said yes, because I was concerned that there was not enough, there were a lot of drivers out there without proper insurance or had no insurance, which is the UM and UIM that would have kicked in under the umbrella. And I asked if that would help me and she said yes, not a problem, I'll get you a quote. That's why I said great, go for it, get me a quote. That fact alone should have precluded the trial court from granting summary judgment. Now that was a conversation between Ms. Gregorio and whom? We don't know her specific name. She's the customer service representative for GEICO. She is a captive agent, if you will. She is, the facts of that are that she's making a phone call asking about her policy and expressing to this sales agent, hey, I'm worried about all these drivers out there who don't have enough insurance. And so when that exchange happens, that agent is inviting her and inducing her to purchase this policy. Now she deals with someone after that, though, right? Correct. And it's, here's, the terms of the umbrella policy seem clear. So why do you contend that they are confusing or that they would have led Ms. Gregorio to lead, you think the policy included the uninsured or underinsured motorist? I mean, obviously, they don't seem to be arguing your, it appears that your client herself had worked in insurance, but they still seem to be applying the general consumer. They don't seem to be saying she's an elevated, more experienced person. Correct. And Arizona law doesn't apply this subjective standard. A lawyer who might read these documents regularly isn't held to a different standard as a janitor. But there's a reasonableness component, isn't there? Absolutely. And Ms. Gregorio's reason to believe that her umbrella policy provided underinsured and underinsured motorist coverage is reasonable. Because remember, she's in this industry. She knows this product exists. But what about the policies made her think that? What language in the policy? So it seems that you, to succeed, you have to go to the representation, the reasonable expectation part of it. Well, I'd like to answer that question in two parts. Okay. First, the reasonable expectation principle or doctrine under Gardner, or Gardner, rather, under Gordnier. You don't have to have an ambiguity in the policy to trigger the reasonable expectation doctrine. The reasonable expectation doctrine is triggered when the customer gets less than they expected. You know, what your argument sounds like is that the reasonable expectations, and I take it that we're talking about Arizona law. Correct. But I take it that under Arizona law, when the insured makes a request, an initial request for something, that that's what the insured gets, regardless of what the policy says. That, cutting through it, that seems to be where we come out with your argument. I think that's only half of it, because, remember, in this dialogue that I read you here illustrates it. I think your question, Your Honor, is the customer gets what they wanted regardless. Well, that's not necessarily true, because under the reasonable expectation doctrine, we've got to learn and we've got to look and say, hey, did the carrier do anything to induce them to purchase this policy? Did the carrier say anything reassuring them and promising them, hey, you're going to be covered, don't worry about it? Did they fail to explain a term that had the customer known about, the customer would have said, hey, this is not what I want. I'm going to go somewhere else and shop and find something I do want. When the first conversation took place, the agent allegedly said that she would get her a quote. Is that correct? Correct. So somebody else had to get back to her to get her the quote, right? Correct. And so that second conversation is documented by the agent in plug notes, blog notes, I can't remember, some kind of corporate mechanism where they take contemporaneous notes. Does your client have any recollection of that interaction? Of the second conversation? Yes. She does. She doesn't have, she doesn't differentiate who she's speaking with. Remember, this is a transaction happening by phone. You're put on hold. You're passed from one to another. You know, I suspect like a lot of customers, you're not necessarily paying attention to who you're talking to, getting their name and so on. You're relying upon them saying, hey, they know more about this product than I, and I'm going to trust what they tell me. Because those notes indicate that she was told that an umbrella policy is essentially excess liability for when you get sued. And that's what the agent said she told her. And there's a dispute because Ms. Gregorio says. She doesn't remember that. And the purpose of my conversation with this agent was, I'm worried about other motorists who don't have enough insurance or no insurance at all. And so she's coming to this person more experienced than she and more knowledgeable than she, saying, help me solve this problem. And the agent says, an umbrella policy, that's going to help you. That's going to alleviate your concern. Could she, her comment, she didn't say tell the agent I wanted an umbrella that has UM or, I mean, she didn't expressly say it that clearly. She said what you said she said. Okay? She used the verbiage little or no insurance. Right. But could that have been interpreted that she was concerned about her own liability situation? For example, if you get in a situation where you're jointly liable and the other person doesn't have enough insurance and you would need more insurance, I mean, could that have been reasonably interpreted by an agent to mean that she might have wanted more insurance? Well, in that situation where there's an incident happens, two parties are liable, Ms. Gregorio and another. The other party doesn't have enough? Is that? Yeah. And so somehow she, if she wanted to get contributions, she wouldn't be able to do it and she would be stuck holding the bag. So that under that scenario where that other party, person A, is partially responsible, doesn't have enough, her underinsured or uninsured motorist coverage would kick in, because party A doesn't have enough to cover their share of the liability. So I don't know if I've answered the Court's question. I hear you. I understand. Thank you. Judge, you asked a question about, and I wanted to answer it in two parts. One was when is the reasonable expectation doctrine triggered, and that is essentially when the customer doesn't get what they expected. But your question focused on the ambiguity or, I think, in the Court's eyes, the lack of ambiguity in the contract. And I think that's what the trial court focused on. And under the reasonable expectation rule, that's not required. You don't have to have an ambiguity. Darner says that repeatedly. So does Gordon-Years. No, I think that, I think, I don't think it's entirely irrelevant, but I think you're right that it doesn't, an ambiguity isn't what triggers it. But it's going to, but obviously in terms of determining what the reasonable expectations are, certainly the language of the contract matters. But you're saying it should be a triable issue anyway. Correct. So the language of the contract is always going to matter. Absolutely. In my response, I didn't mean to suggest that the language of the contract doesn't matter. Yeah, but I understand where you're saying, I mean, I am not, I think I'm not making the mistake to say just because the language is clear, say, if that were my view, that it's unambiguous if you actually look at it, that it doesn't mean that that exception is not available. Correct. Let me ask another question about the reasonable expectations doctrine. Your brief repeatedly says that it's invoked so as not to use boilerplate or standardized terms of an insurance contract. Which boilerplate or standardized terms are you contending exist in this contract? It's on page 94 of the record. It's paragraph 12 under the section part 3 exclusions, paragraph 12, page 94 of the record. And if I may read it directly, because it goes to another issue that Judge Callahan has raised, paragraph 12 says, personal injury and property damage resulting from an uninsured or underinsured motorist claim unless a premium is shown for the uninsured or underinsured motorist coverage in the declarations. So that's paragraph 94. If the Court looks at page 90 of the record, which is the declarations, it lists the auto for which she was seeking coverage, the Nissan. It lists one premium, just liability. We think. It doesn't specify this is liability. It doesn't say this is uninsured or underinsured. But it's got the liability limits. It's 30, 30, 50, 300, 350. That's the liability. There's no 50 on the U.M. coverage, right? That's to the – if I may, I'm going to look at it. Don't worry about it. That's okay. Go on with the argument. Don't worry about it. To answer your Court's question, the Court's correct. There is no 50. But still, under Arizona law, we have always put the onus on the carrier to explain its product, to define its terms. So if that exclusion is stricken, there's still nothing in that policy that would cover her, because it's a liability policy. It covers damages you have to pay. So you would strike out the coverage provisions, too? As boilerplate? No, under the reasonable expectation rule, you would strike the exclusion, and you would turn to the dominant purpose of the transaction. Why was Ms. Gregorio making this phone call? Why was she soliciting the help of her insurance carrier? And the answer to that question is because she was worried about motorists who didn't have enough insurance or carried no insurance at all. That's the protection she wanted. And when it came time to collect on that protection, her insurance carrier turned and said, sorry, ma'am, that's not what this says. Well, gee, no one explained that to me when I asked you to give me this product. Is there evidence in the record whether what she wanted was available at all? There is. It's paragraph 12 itself. GEICO provides UMUIM coverage unless it's qualified by that unless. But on an umbrella. Can you get an umbrella that will kick in on the, yeah, you can get the, is there, can you get an umbrella as such at that time? Because there are insurance companies that don't sell umbrellas for uninsured motorists and underinsured. I suppose there are, and there are some that do, and we know that. We know that Judge Wake, who was called in on a deposition, checked his own policy and said, jeez, thank goodness I have that. So, yes. And that's one of the issues that's kind of circulating this whole thing, is that there are a wide variety of insurance products out there. For GEICO to come here and say, oh, we don't sell that, simply is not true, because they do. They sell it in other States. They just chose not to sell it in Arizona. Do you want to save any time for rebuttal? I do, and I'll reserve the balance of my time from this point forward.  Thank you.  Thank you. Good morning, Your Honors. Good morning. Eileen Gilbride for GEICO. I'd like to start with the statute of limitations issue. I know you've been talking about reasonable expectations. The district court didn't reach this issue, but I think it's the easiest one to affirm on. ARS section 12-555 is the statute of limitations in this case. But wait a second. Doesn't Arizona's three statute of limitations govern uninsured and underinsured motorists claims apply only to motor vehicle policies, not to umbrella policies, and why should we read the statute differently? The first sentence talks about motor vehicle policies. The second sentence, which is the one we're operating under here, doesn't speak of motor vehicle policies. It just says if there's a claim, if you want to make a claim under UMUIM, it has to be within three years of the date you knew the tortfeasor was underinsured. Do you have any cases that, because, oh, look, that apply that statute to UM coverage, to umbrella coverage? I'm sorry. There, one of the cases, I believe it was Grabowski, or the Grabowski case from Arizona talked about UM in an umbrella policy, but it does not, it didn't apply to this particular, to our particular situation. I think the reason the statute, the first sentence applies to auto policies is because umbrella policies just don't normally have UMUIM in them. There is evidence in this record that there are some that do. GEICO doesn't, and it's undisputed in this case. Because I know I have one. Okay. So there are some that do. In other states, yes, absolutely. There aren't many in Arizona. GEICO doesn't provide it in Arizona, and the record is undisputed on that. We have an affidavit from GEICO's umbrella guy who says we don't provide it in Arizona. And when we do provide it in other states, it costs a heck of a lot more than 127 bucks, because you can't, it's hard to calculate the risk of insuring for a million dollars everyone out there who's underinsured or uninsured. And so I think if you're going to say, fine, we're going to assume that UMUIM exists in this umbrella policy, which I'm not willing to assume that for our purposes, but if the court wants to assume that, I think you also have to take with it the three-year statute of limitations that comes along with UMUIM claims. Well, tell me why the conversation, as the plaintiff relates it, doesn't create an issue of fact under the reasonable expectations doctrine. If we get by the statute of limitations issue, and I'm not sure we do, but if we do, her conversation just does not amount to more than a scintilla of evidence, enough to create a question of fact. The district court was correct in saying she has to have evidence sufficient from which a jury could find that GEICO promised her she had UMUIM in her umbrella policy, and I don't think her conversation is sufficient to do that. As Your Honor noted, the policy is very clear, and I would like to turn your attention to one thing, or two things, actually. Page 94 of the record, it's not just the exclusion, paragraph 12, that counsel is talking about. You need to look at paragraph 10, which says this policy, this umbrella policy, doesn't cover personal injury to any insured. I mean, that's pretty clear. And also in the prior page, page 92, that is, two prior pages, paragraph 6 defines declarations. Counsel was saying, well, it's unclear whether the declarations refer to the declarations of the auto policy or the declarations of the umbrella policy. Paragraph 6 makes it clear. It says declarations means the declarations page for this policy. It's very, very clear. We have a very sophisticated buyer. She sells umbrella policies herself. She understands what UMUIM is. And she said in her, she called the GEICO in order to reduce her deductible, because the lien holder needed her to do that. She called, please reduce my deductible. GEICO said, okay, we'll reduce your deductible. Are you interested in an umbrella policy? She says, yes, yes, I guess I am. According to her, she says, I'm concerned about people out there who are underinsured or uninsured. Fine, we'll get you a quote. According to her, she says, the lady at GEICO said, we'll take care of that, no problem. That's all we have. What did she actually get as a result of all of this in the policy? The umbrella policy? Yes. So she got a million dollars of coverage for people who sue her. She hurts. Right, people who sue her or whom she injures. And what did she have before? She didn't have an umbrella policy before, and she had an auto policy with higher deductibles. She had to get the deductible. So she lowered the deductible. She increased the coverage from 100, 300 to 300. So if the person that caused her catastrophic injury sued her, say she had been at fault in the accident, that the million dollars would kick in on her liability to the other driver. Yes, yes, yes. But if the other driver only had, what, 15,000 or something like that. That's correct. So it doesn't, that's what she was not getting, and that's what's in dispute here. She got the 15 from the underinsured driver. She got 300 from her auto policy underinsured driver. Because of her limits. Because of her own underinsured coverage in her auto policy, and she got 250,000 from the state because of the cable barrier liability, the person crossed over the cable barrier. So when you have a policy that is so clear, you have a sophisticated buyer. She admits she didn't remember who she spoke with. She didn't remember hardly anything about the phone call at all. She didn't remember who she talked to. She didn't remember why she called GEICO. All she remembered is that she was concerned about people out there who are under or un- or underinsured, and somebody said, we can help you, no problem. What sort of condition was she in when she was having her deposition taken? Because she was hurt really bad, right? This was, she was hurt badly to begin with. I believe her deposition was taken a few years later. I'm not, I don't have it on me. I know I could find it if I went back and looked. I did not take her deposition, because our trial lawyer took her deposition. But she was very, she was coherent. She was cohesive. She knew exactly what she was saying. She knew exactly what she was doing. She got 300,000 UM and made a claim from her auto policy right after the accident in 2005. And she waited four years to make a claim under the umbrella policy, and that's our statute of limitations argument on that. But when you have the policy that is so clear, a plaintiff who really doesn't remember the conversation at all, and she's sophisticated and understands insurance, she sells it herself. She took tests to be able to sell it herself. Did you question her about, or did your lawyer question her about the second conversation? And if so, what did she say? She didn't know if there were two conversations. She didn't remember. All she remembered is, she didn't remember, she remembered she contacted GEICO, she didn't remember why, she didn't remember if the person called her back or put her on hold and transferred her, and whether she got a quote then or whether she was called back. She didn't remember any of that. All she remembered was she had called GEICO to reduce her deductible for her lien holder, and GEICO asked her, are you interested in an umbrella policy? And she said, yes, sure, get me a quote, and that she was concerned about people out there having less or no insurance. That's all she remembered. The amount of money that she actually is asking for now is how much? She's asking for a million dollars. A million dollars. Right. That just doesn't exist under our policy, never has. Unless the Court has any other questions. I think we have your arguments in mind. Thank you. We don't appear to have other questions. Thank you. Thank you very much, and we'd ask you to affirm. Thank you. I think I heard Ms. Gilbride say that all we have is what she said to the customer service representative, what she's worried about, and that's not all we have, because during that discussion of getting this umbrella policy, the representative from GEICO said, well, to get that policy, that umbrella, you have to increase all your limits, because we won't sell you an umbrella unless you're maxed out at the coverage level on your primary, including uninsured and underinsured. And so it makes sense. Well, okay, I was carrying 15-100 before. I want extra protection. I'm going to up my protection on my primary, and the primary reason for this call is to up my overall protection. I'm going to do that on the umbrella. But she did up her protection on her uninsured motorist. Correct. And her testimony is, her understanding of how umbrellas work is that they work in conjunction with the primary. Now, the GEICO is here saying, oh, she's a sophisticated buyer, she's knowledgeable. We don't have a subjective standard. We don't have a different standard for her. But if you want to discuss it, she didn't have a college education. She started out as a file clerk in an insurance company, and she started taking some classes. But we don't have a subjective standard on how to read a policy. But the standard for insurer behavior is that it has to create a reasonable that there's a reasonable standard in those last two prongs of the Gordner test. That seemed to me would take into account the specific circumstances of a sophisticated person, not in the interpretation of the agreement necessarily, but in how the interchange between the agent and the customer came about. It seems to me that reasonableness, you would have to take the plaintiff's knowledge of the industry into account. No? Well, certainly. But that's an issue for the trier of fact. The jury structure gives you the right to say that. Whatever's in the record is enough. I mean, clearly the reasonable expectation is for the most part a factual dispute, unless, as the appellees say, there's only a scintilla here, and it doesn't raise to the level of being a factual dispute. So it really comes down to the interpretation of the record that we have before us, whether that's enough to create a factual dispute. Because you can always, I mean, we've all done summary judgments, and probably as trial judges, as appellate judges, and, you know, we've all seen them. And so just because someone says, I disagree, that doesn't necessarily create, you know, it has to be a little more than that. Correct. And we have a little more than that. But what is there? I'm still having trouble understanding what there is aside from the evidence of what she told the agent in that original phone call that establishes the reasonable expectation. The agent then says, an umbrella will help you. She says, that will help me? Yes, that will help your concern. The agent then says, in order to get this product, ma'am, to alleviate this concern that we're talking about, you have to up your premiums across the board. She says, great, do it, I'll pay it. So we have to look at her conversation, we have to look at the agent's conversation, and is it a scintilla or does it rise to the level of a tribal issue? It rises to the level of a tribal issue. And that's your position and they have their position. But that's really, that's the centerpiece of all of it. Correct. The other issue, and I think is concerning to me, just in application of Arizona laws, is the court, the trial court in this case, made the same mistakes that the court of appeals made in Garner and the same mistake that the court of appeals made in Gordiniere. And that is, he was concerned with, we can't add terms under the reasonable expectation doctrine. Well, that's not true. You can add terms if it's consistent with the customer's reasonable expectation. The trial court also was concerned that ---- Well, we have everything that the trial court has. We have the record and we look at that de novo. So I think we can make that determination here based on the record, is my belief. Fair enough. My last comment, Your Honor, is that, you know, the court should be looking at what's this customer's expectation. And instead, this Court turned to a New York Times article and an article out of Florida that just simply couldn't take judicial notice of and took that away from a jury that should have heard and evaluated Ms. Gregorio's memory and her consistency. All right. Thank you both for your argument. This matter will stand submitted.
judges: Vance, Schroeder, Callahan